IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-399-FL

| | |
|---|---|
| PHYLLIS M. SMITH, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE ## 46, 48). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered memorandum and recommendation ("M&R") (DE # 51) wherein he recommends that the court deny plaintiff's motion, grant defendant's motion, and uphold the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff timely filed objections to the M&R, to which defendant did not respond. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

## BACKGROUND

On February 5, 2007, plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of January 22, 2007. Hearing was held before an Administrative Law Judge ("ALJ") on August 31, 2009. Plaintiff was represented by counsel, and

a vocational expert ("VE") testified. On October 16, 2009, the ALJ issued a decision denying plaintiff's request for benefits. The Appeals Council denied plaintiff's request for review on July 28, 2010. Plaintiff filed her complaint in this court on September 22, 2010, seeking review of the final administrative decision.

A detailed summary of the procedural and factual history of the case is found in the M&R. See M&R 4-7. Where plaintiff does not object to this portion of the M&R, the factual history of the case as set forth in the M&R is incorporated here by reference.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed

2

Case 5:10-cv-00399-FL   Document 53   Filed 03/19/12   Page 2 of 9

findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 22, 2007, the alleged onset date of her disability. The ALJ then found at step two that plaintiff had the following severe impairments: degenerative disk disease, carpal tunnel syndrome, diabetes mellitus, hypertension, asthma, chronic obstructive pulmonary disease, and obesity. However, at step three the ALJ further determined that these impairments were not sufficiently severe to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

3

Prior to proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff had the ability to perform light work with alternating between sitting and standing. In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible. The ALJ further found that plaintiff was unable to perform any past relevant work. However, at step five, upon considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that plaintiff could perform. The ALJ therefore concluded that plaintiff had not been under a disability, as defined in the Social Security Act, from January 22, 2007, through the date of his decision.

B.  Analysis

   1.  Plaintiff's Cardiac Impairment and Listing 4.02

Plaintiff first objects to the magistrate judge's finding that the ALJ adequately considered plaintiff's alleged heart condition, which condition plaintiff asserts amounts to chronic heart failure, as defined in Listing 4.02. See 20 C.F.R. § 404, Subpt. P., App. 1, § 4.02. Plaintiff acknowledges that the ALJ need not consider every impairment at step two of the sequential evaluation. But plaintiff contends that the ALJ failed also to examine plaintiff's asserted heart problems in subsequent steps. Where plaintiff identifies only one Listing related to the cardiovascular system which she purports to meet, Listing 4.02, plaintiff's objections as to the ALJ's failure to consider her asserted heart problems can be reduced to the following issue: whether the ALJ erred in failing to find that plaintiff had an impairment that meets or equals Listing 4.02.

"To be disabled under the Listings, . . . the claimant must present evidence that the impairment meets or is medically equivalent to an impairment listed." Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986). The ALJ is responsible for identifying the relevant listed

4

impairments and for developing the evidence. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ further "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Id. However, "the ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is ample evidence in the record to support a determination that an impairment meets or medically equals a listing." Kelly v. Astrue, No. 5:08-cv-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. May 12, 2009).

In Cook, the Fourth Circuit held that the ALJ should, after identifying the relevant listed impairments, compare each of the listed criteria to the evidence of the claimant's symptoms. Cook, 783 F.2d at 1173. However, the court has since clarified that Cook "does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases." Russell v. Chater, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (per curiam) (unpublished table decision). "Meaningful review may be possible even absent the explicit step-by-step analysis set out in Cook where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof." Johnson v. Astrue, No. 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009).

In the instant case, the ALJ did not reference Listing 4.02. The ALJ did discuss, however, evidence in the record that plaintiff identifies as supporting her claim of satisfying Listing 4.02. First, the ALJ referenced the report summarizing plaintiff's May 2007 examination at Immanuel St. Joseph's Hospital. Second, the ALJ noted the catheterization plaintiff underwent in July 2007, which the ALJ stated revealed "essentially normal coronary arteries and left ventricular hypertrophy with normal systolic function." After referencing this evidence, the ALJ concluded in his step three

analysis that "[t]here is no evidence of any chronic heart failure."

Plaintiff disagrees with the ALJ's conclusion. The record, plaintiff contends, establishes that she met the requirements of Listing 4.02. The court will therefore consider whether substantial evidence supports the ALJ's finding that plaintiff did not suffer from chronic heart failure, as defined in Listing 4.02, during the asserted disability period.

Subsection A of Listing 4.02 requires plaintiff to demonstrate the medically documented presence of either (1) systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or (2) diastolic failure with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure). 20 C.F.R. § 404, Subpt. P, App. 1, § 4.02A. Next, under subsection B, plaintiff must demonstrate that the systolic or diastolic failure results in one of the following:

> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

6

a. Dyspnea, fatigue, palpitations, or chest discomfort; or
b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § 404, Subpt. P, App. 1, § 4.02B.

The magistrate judge did not reach a definite conclusion as to whether plaintiff satisfied the subsection A criteria, because he determined that she failed to satisfy subsection B. The magistrate judge found that even if plaintiff suffered systolic failure in July 2007, as argued, she had not presented any evidence that the July 2007 systolic failure resulted in an inability to perform an exercise tolerance test at a workload equivalent to 5 METs or less, as required by Listing 4.02B(3). Plaintiff responds that evidence in the record demonstrates that she was only able to achieve five METs during a May 11, 2007 test. The final report from this test states: "The patient achieved 5.0 METS with a double product of 20008. The test was terminated due to dyspnea and leg distress . . . Normal left ventricular systolic function. Estimated left ventricular ejection fraction; 66 %." (R. 365).

The magistrate judge correctly notes, however, that at the time of the May 2007 stress test, plaintiff had an estimated ejection fraction of sixty-six percent, well above the regulatory requirement of thirty percent. Plaintiff has not presented to the court any evidence that, concurrent with or subsequent to her July 13, 2007 catheterization, report of which indicates an ejection fraction of twenty percent, she had been unable to perform an exercise tolerance test at a workload equivalent

7

to 5 METs or less due to dyspnea, fatigue, palpitations, or chest discomfort. 20 C.F.R. § 404, Subpt. P, App. 1, § 4.02B(3)(a). Nor has plaintiff argued or shown that she satisfies other criteria of subsection B. Accordingly, the court agrees with the magistrate judge that plaintiff has failed to meet her burden in establishing the requirements under Listing 4.02. Therefore, substantial evidence supports the ALJ's finding that plaintiff did not suffer from chronic heart failure.

2. Listing 1.04

Plaintiff contends that the ALJ erred in finding that plaintiff's condition did not meet Listing 1.04, which listing relates to disorders of the spine. Under Listing 1.04A, which the magistrate judge correctly identified as the relevant subsection here, a plaintiff must produce "[e]vidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, [4] if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. § 404, Subpt. P, App. 1, § 1.04A.

The magistrate judge determined that plaintiff had not produced evidence to support a finding of motor loss accompanied by sensory or reflex loss, and therefore did not satisfy the third requirement of Listing 1.04A. Reference was made to the physical examinations performed by Raleigh Neurology Associates in June 2007, and by Raleigh Neurosurgical Clinic in April 2009. Records from the first examination indicate: "Motor: Muscle bulk is normal throughout. Muscle tone is normal throughout. MRC graded strength is 5/5 in the upper and lower extremities." (R. 405). Further, records from the April 2009 examination state that plaintiff had "5/5 power in bilateral upper and lower extremities." (R. 531). As both the ALJ and magistrate judge concluded, these records demonstrate absence of motor loss.

8

Plaintiff has the burden of demonstrating that her impairment meets or equals Listing 1.04A. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). She has not directed the court to any evidence in the record that would support a finding of motor loss, as is required by Listing 1.04A. 20 C.F.R. § 404, Subpt. P, App. 1. Further, the June 2007 and April 2009 physical examination records indicate that plaintiff had not suffered motor loss. Accordingly, substantial evidence supports the ALJ's finding that plaintiff's back impairment does not meet Listing 1.04.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered reviewed of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full, GRANTS defendant's motion for judgment on the pleadings (DE # 48), DENIES plaintiff's motion for judgment on the pleadings (DE # 46), and upholds the final decision of the Commissioner. The clerk is directed to close this case.

SO ORDERED this the 16th day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge